Due to technical difficulties, there are unrecorded portions of this oral argument. For second case today, we have case number 20-2348 Laufer v. Naranda Hotels. And thank you very much, Madam Clerk. And Mr. Bacon? Yes, thank you, Your Honor. Good afternoon, and may it please the Court. I'll try my best to, with this shifting legal landscape, pack it into the time I have as best as possible. And in that regard, the issue really turns on which Supreme Court precedent applies. Is it Haven's realty, or is it the additional harm imposed by the Spokio Court? I'll start with Spokio. Spokio described two different kinds of statutes. One, to which it applied, is the sort of statute where an injury is created simply by statute, and a violation of it is not related to any harm that exists in the real world, or even a risk of harm. The example that it gave was an incorrect zip code on a credit report. In that case, the Supreme Court held that what a court must do is look beyond the mere definition of injury in the statute and find something additional before, some sort of injury. What Spokio described is the sort of statute where there was a real world harm, and when Congress enacted a statute, it made that harm actionable, in which instance, the court must look to the terms of the statute for the definition of injury. Courts, that is, you know, that was 2016. That has caused a lot of decisions and a lot of concern in a lot of courts, you know, in many areas of the law, including this one. And in June of last year, the court in TransUnion, that's after everybody's briefing in this case, issued a decision clarifying that the additional harm requirement does not apply to discrimination cases. And I'll cite the passage at 141 Supreme Court Reporter 2190, specifically the page break between 2204 and 2205. It states, courts must afford due respect to Congress's decision to impose a statutory prohibition or obligation on a defendant and to grant the plaintiff a cause of action to sue over the defendant's violation of that statutory prohibition or obligation. It cites Spokio. Then it says, in that way, Congress may elevate to the status of legally cognizable injuries, concrete de facto injuries that were previously inadequate at law. And it cites Spokio again. It cites Lujan. And then it also cites Allen v. Wright for the one example it gives, and that is discriminatory treatment. Allen v. Wright, while it's not an ADA case at all, it merely indicates that discrimination is by itself stigmatic injury and dignitary harm. And the 11th Circuit post-briefing in the Sierra case cited that, it was just before TransUnion, in holding that a disabled person's review of a municipality's website was stigmatic injury and dignitary harm and therefore actionable under Title II. And in the concurring opinion, Judge Newsome had indicated that that was the saving grace that took it out of Spokio. The ADA is exactly the sort of statute, even without TransUnion having clarified that discrimination is the sort of statute, the ADA fits that description. The injuries described by Congress are set forth in its Findings of Purposes section. Can we talk about the Fourth Circuit? Does the Griffin case, our case in Griffin, apply here? And if so, how? Or if it's distinguishable, how would you distinguish it? I'll say the courts which rule against us, I'll say Griffin, for the point that the information must have some relevance to the plaintiff. And for the point that they're, you know, for the notion that they're of no limiting principle, if they allow that plaintiff in. But the question then is, you know, first of all, they ignore the Carrello Court where the Seventh Circuit- So you think Griffin is against you? Griffin is- Griffin was a relatively narrow, I mean, it can be viewed as a narrow opinion, because there the plaintiff couldn't follow through anyway, because he couldn't be a member of the organization he was trying to get information from. Well, I can advise the court that other courts have looked at Griffin. They ignore the statement in Griffin that it was expressly limited to instances- Okay, but other courts don't matter, really, for your case, because you're in the Fourth Circuit, and Griffin is in the Fourth Circuit. And one of the judges that was on the Griffin panel is now on your panel. So I think your argument about Griffin, if you have one, that it is favorable to you, the Fourth Circuit might be amenable to that, regardless of what other courts say about what we say. That was going to be my last argument, but yes. So Griffin's no limiting principle and must have some relevance to the plaintiff argument applies only if Haven's Realty is overturned or does not apply. If Haven's Realty applies, then a person who is deprived of their right to information within the meaning of the statute has suffered injury, regardless of having alleged any intent to do anything with that information. So Judge Harris, if that's right, then does that mean Griffin was wrong? No. Is it also true that Griffin can only be right if Haven's Realty is overruled? How do you reconcile Griffin with Haven's Realty? It's reconciling. It's not whether it was right or wrong. Because under Griffin, for example, that plaintiff really did not have standing to sue because he was not deprived of a full and equal enjoyment of the service of that place. But I thought you would say under Haven's Realty, why does that matter? There was a stigmatic injury. I guess for purposes of whether Haven's then I don't see how this case is different from Griffin. If one looks at Allen v. Wright and the Sierra case, then it devolves on whether or not that plaintiff is a member of the protected class. The Griffin plaintiff was not a member of the protected class. That defendant owed no obligation, no duty to the Griffin plaintiff. There was no obligation to provide anything to that plaintiff, let alone information. There was no informational right. That plaintiff was not deprived of anything on the basis of his disability because he was not entitled to any enjoyment of the services of that defendant. So never even triggered 121H2. I would disagree with Griffin to the extent that it relied on Spokio because under the involved, which section of the statute? We don't know. And perhaps it's the auxiliary aids and services section of the statute. There's no clear statutory regime where in our case, violation of regulations, a violation of section 121A2, B2A2, which constitutes discrimination is therefore deprivation of full and equal enjoyment of a service and benefit and advantage of a place of accommodation under section 121AA. But when you put it that way, I guess my question is consistent with Griffin. I agree with you. This regulation is about a right to access these accommodations. And if the plaintiff doesn't want to access the accommodations, I guess I am having trouble under Griffin seeing how there's a sort of a particularized harm there, a harm that wouldn't be shared by anybody else who sort of comes across a noncompliant booking site. Again, let me give you a hypothetical. What if it was an ADA tester who was not in fact disabled, who comes across the same booking site and sues? Do you think that person would have standing? No, because he was not deprived of anything on the basis of any disability, which is a requirement of the statute. So no, the answer is no. It has to be deprivation on the basis of disability and Griffin... Right, but I thought you were describing the regulatory regime as being about sort of a right to access these accommodations. And your plaintiff also wasn't denied access to these accommodations because she didn't want access to the accommodations. If the Department of Justice had wanted to, it had a choice. It could have promulgated the regulation under the client's or customer's provision of the ADA. And under, for example, PGA 4 versus Martin and the Houston versus Merritt case and other cases, then there would have been a nexus requirement that the person at least want to be a client or customer of the defendant. But under Haven's Realty, one simply looks at the statutory, and in this case, regulatory scheme under Chevron is to be encoded the controlling weight of law, but apply the definitions of injury created by the statute. Spokio is about whether or not one ignores that and looks past that and has to find additional harm. But TransUnion clarifies that doesn't apply. That does not apply to discrimination. Those are two separate bodies of law and one does not tread upon the other. I didn't get into the argument where TransUnion also discussed downstream consequences and cites a couple of cases that said, do you apply downstream consequences or does Haven's Realty prevent us from doing that? And they said no, because Haven's Realty only applies to discrimination cases, and theirs involve the Third Bed Collection Practices Act, which are not. So TransUnion clarifies that if it's a discrimination case, one looks at the statute under Haven's Realty, and Haven's Realty applies, and the statutory scheme is what defines the injury. And one simply goes through the regulation and the statute, and if the plaintiff checks off those boxes, doesn't have to allege that they intend to travel to the area. I mean, in this case, this plaintiff actually did go to Colorado, Wisconsin, New York, Maine, Maryland, and back down to Florida. But to put that in as a requirement of allegations, and she did that in July, but to put that in as a requirement of allegations would simply, it would be bad law in our opinion. Because... What exactly the alleged regulatory violation is in this case, and I don't want you to get, I'm not trying to get you into the merits, but I sort of agree with you that what we have to figure out is what kind of an injury is this regulatory regime, statutory and regulatory regime protecting against. And at least as you argue the case, which is that this is sort of an informational right, there is a freestanding informational right to have this information, whether or not you plan to book a room. Which subsection of the regulations are the hotels violating? It's in my brief, but off the top of my head, it's 28 CFR 36.302E. It was promulgated in 2010, and that's the... No, no, no, I know it's E, but I guess there's a bunch of... What exactly did these hotels do wrong? Just in common sense English, is there... Because the complaint says that they didn't identify or allow for reservations of accessible rooms, and I wasn't clear. Is it a failure to identify something about the rooms, or was it a failure to like, was it not possible to actually reserve the rooms? I didn't look into the actual specifics of this case, but every single case is virtually the same. They are. The allegation in the complaints is identical, and I don't understand the allegation. And they have the same violation. In other words, the hotels... Right, but I don't understand what it is. They'll have a book now option for say, for example, a king room, a clean room, double bed room, river view room, that sort of thing, with a book now option, a reserve now button you can click on, and it reserves the room. Yeah. And what it doesn't... What it is supposed to do is have an accessible room that you can also click on to... That's the same... That's reserving a room in the same... So, if I understand that your answer to Judge Harris's question, her question was, what did they do wrong? And I'm hearing you say that what they did wrong on their website was when somebody does a search for a room, they did not offer a handicap accessible room in response to that search. They just offered... Correct. Okay. Yeah. And it's too prompt. And they're also supposed to provide information regarding whether or not the features at the hotel are accessible. And typically, what happens is hotels don't, because on the one hand, they didn't want to comply with regulation or something else to do. And on the other hand, to do so would then reveal the existence of physical violations. They're supposed to identify if they don't have a roll-in shower. They're supposed to identify if the registration counter is not in compliance with the specifications, and so on. Handicap parking spaces, and so on. So, it's two-pronged. It's providing the option to book and providing the information regarding accessibility. So, it's two different... It's really separate into two sorts of obligations. And would you say your client suffered an Article III injury with respect to both of those? How is the failure to have a room available to book an injury for someone who has no interest in booking a room? Well, through an online reservation service, a hotel advertises nationally and reaches out nationally, transacts businesses nationally to people all over the country in their own houses, on their own computers. And what it provided to non-disabled people, it did not provide to her. And those were service advantages. So, that's not an informational injury. That's just like there is not a room available for you to book. That's sort of an access injury. Well, there's the one and the other. Right. I know. I'm asking you because none of this is in your complaint. I am forced to have this conversation with you at oral arguments. So, I would appreciate it. It would be vastly more helpful if this was in your complaint. Then I would not have to waste your time here today. And I'm not saying you drafted the complaint, but this is nowhere in the complaint. So, I'm hearing this for the first time. Now, I am understanding you have two distinct claims. One is there is no accessible room available to book. Got it. The other one is there is missing information about the degree to which I gather the hotel's sort of general facilities are accessible. I'm asking you now just about the first one, the failure of... That's not an informational injury, right? The first one is more... I mean, would you describe that as an informational injury that there is no room available to book? That is a good question. Thank you. I think that it's... To the extent it's information provided electronically to the plaintiff, then yes. And then how, if not, I'm not sure how to categorize it. I mean, if for example, that would be clearer if that were promulgated under the statute, in which case that would be made clear that... Or if... I suppose that the Department of Justice had issued it, it added to its regulation that it was for a particular purpose that, well, that might be in contra... It would have to promulgate it under a separate subsection. There are several other subsections that do have some sort of additional nexus requirement from which additional harm can be imposed. I briefed that ad nauseum in the brief, and I think what's more novel here is the shifting landscape as to the application of Spokio. I think our winner looms, this case, on whether or not Spokio's additional harm requirement applies, and whether or not Havens Realty does not. And I was really prepared to... I argue already why Spokio clearly does not apply to discrimination cases, and Havens Realty does. And I was... To the extent that there are other courts that have ruled against us, they all come up with some conclusion that Havens Realty does not apply. And I was... It's hard to pack that into the time that I have, and I'd like to reserve the time that I've got for my rebuttal argument. But their arguments or their rationale are flawed for various reasons. But once one establishes the two, once the court decides on which applies, Havens Realty or Spokio, then it's... Following the regulation to the statutory framework which establishes discrimination, the question is whether or not the statute can define the injury or whether it cannot. We've given you some extra time, Mr. Bacon, and you've got a couple minutes, a few minutes left for rebuttal. Let's see what the other side has to say. Hey, please, the court... Good afternoon. Stephen J. Perot on behalf of the appellee. That's all right. I'll answer anything close to it. It's important that I can convey to the court that in Lawford's brief at page 502, Lawford limits her appeal to the issue of whether there has to be a physical nexus or intent to return issue. But I have to say that in our brief, we have not so limited our argument. We think that there are some other reasons why the district court was correct in its ruling. We filed a 12B6 motion, and there were some questions about, well, what did you say in the complaint was the violation of the ADA and the regulations, 28 CFR 36302, and part of our problem is that there's an indication that we didn't provide sufficient information. But the judge did rule on the 12B6 motion. Well, the judge talked about... She ruled on the 12B1 motion. Isn't that correct? I'm not sure. I went over that last night and looked at the opinion, and she talks about the district court judge about what has to be alleged in a complaint, and that the plaintiff has relief on the 12B1, as I understand it, as I read it. It didn't reach the 12B6. Indeed, if I perceive it, if we think she was wrong on the 12B1, 12B6 issue, it would be before the court on remand. Your brief says she dealt with both issues, I think. Right. Now, if I read it wrong... Not on that, because I thought your brief was wrong, or I think it's wrong, on that point. Well, I respect that, but respectfully, I thought the court ruled on the motion to dismiss generally. But let's assume, for purposes of this argument, it's 12B1, where in either the complaint or the record before the 2020 testimony from Ms. Laufer, and really nowhere in there is there any indication as to what was violated under 28 CFR 36-302E. Also, keep in mind that these were third-party reservation sites. There is an affidavit from Ashley Cherry, from the appellee, who said that our websites comply. We put the information on the websites, and in fact, in July, we contacted some third-party sites and asked for a revision. The question is, first off, what is the violation? Secondly, is it something that is traceable to Miranda Hotels? And we cited to the court some cases that really looked at that issue and whether what a plaintiff has to prove. The Love v. Marriott case out of the Northern District of California in 2021, Laufer v. Patel, Western District of Texas, 2021, and Laufer v. Ark Hospital, December 21, 2021, out of the District of New Jersey. In those three cases, the court said, hey, wait a minute here. The DOJ guidelines don't spell out what you have to put on the website, and if the third parties don't put on what you asked them to put on, it's not the fault of the hotels. In our affidavit, which is part of the record, we said, look, we provided this information. There's no requirement under 28 CFR 36302E1 that every single amenity be spelled out. In fact, there's a case I cited to you. The court said it might be okay if you just say it's accessible, and in this case, I don't think that there's any dispute that Laufer didn't check our on the issue of whether there was a real harm. I don't think there's any question that Havens does not apply and that Spokeo does apply. In Havens, what was outlawed was the statute said you will not make a false or fraudulent statement about properties that are available for rent, and in that case, that's exactly what the defendant in that case did. They made a false statement, but in Spokeo and in the transunion case, I think the general rule has been, and I don't think any circuit or district court rejects this, and that is that regardless of what the statute says, the district court has to make sure that there is a real harm. Article 3 is a constitutional provision and Congress can't bypass it. In this case, while it looks like a discrimination case, it really wasn't because whatever information was available on these third-party websites that admittedly Miranda Hotel provided information to, the same information was available to disabled people and non-disabled people, and it doesn't become a potential discrimination case unless or until the person going on the site says, hey, I'm going on the site for a reason, and that's the book of room, or I'm planning a trip and I want the information to be able to know whether I can take a trip. I also don't think it's disputed that when you look for standing, you have to look at whether standing exists at the time the complaint is filed. In this case, based on the record going beyond the pleading, the October 6th statement, December 1st testimony, in both cases, Ms. Wofford said, I have no immediate plans and no serious plans to take a trip up to Baltimore, outside of my home state, until the COVID emergency is over. In fact, in her testimony... Counsel, can I stop you? Because I don't understand them to be challenging sort of that factual finding. I think we're just here on this question of whether for standing, you have to show the intent to book a room. And on that, I just want to take you back to Havens Realty, because I agree with you that the question here is whether Havens Realty applies. And you say it doesn't, because they are the statute, they're sort of a freestanding requirement that you give true information about availability. But here, I mean, there is a regulatory requirement that you give this information about accessibility. And in Havens, I mean, it's pretty clear, right? That as a practical matter, it's not like Congress, this isn't a false statement statute, it's a discrimination statute. Congress wants people to have that information so that they have access to these rental properties. And here, well, at least the agency wants you to have that information so that people will have access to the room. So tell me again why they're distinguishable? Well, because in Havens, the statute said, as part of our statutory scheme to prevent discrimination, it will be an offense if you give false or fraudulent information about what rental units are available. And so the crime, once that fraudulent statement was issued, or that the offense, civil or criminal, was the giving of the false information. But how does that distinguish this case, where there is at least a regulatory right to have this information? And so the offense would take place when you don't put the information on your website. But the harm doesn't occur unless you have an interest in actually using the information to book a trip, or use it to book a room. So you're saying there's something... The harm occurs under Havens when you give the statement, when you give the false statement. Is there something you can point to in this statute, or the regulatory scheme, that lets me know that in this case there's no freestanding right to information? Congress is not trying to give you a freestanding right to that information. They're only trying to give you a right to that information in connection with the booking of a room. How do I know that from looking at this statutory scheme? Well, you have to know that from the constitutional requirements under Article 3 that says... No, no. No, I don't. Because you're saying that if I look at the statute in Havens, I will see that you are supposed to have that information whether or not you want to rent a room. Fine. And if I look at the regulatory regime here, I will see they are not trying to give you a right to that information, even if you don't want to rent a room. So this really is about the difference, isn't it, in the statutory schemes? The way I interpret Havens and the 10th Circuit opinion in law for the looper that discusses Havens is it wasn't simply an informational harm in Havens. It was a giving of a false statement. It was an act. It was a crime or an offense of In this case, certain information must be given to potential people so that they can determine whether there are accessible rooms. But it doesn't become a discrimination unless or until a disabled person goes, wants to try and book an accessible room and finds that they can't find it. And that the problem in this case, the discrimination. Okay. But just that sentence you just said, how do I know that's true? Where do I look in the regulation or the statute to confirm what you just said? That is my question. You read this regulatory scheme so that it is not a freestanding right to information. The absence of information is only cognizable if you plan to use it to book a room. And my question for you is how do I know that? What you look at the statute, the statute says that you can't treat disabled people different from anyone else. And under the regulations, under section E1 and 2, it says you have to provide this reasonable information. If a person goes on a website and doesn't see the information, there can be no discrimination. There can be no treatment of a disabled person differently than a non-disabled person unless the individual that goes on the website can't find the information and they intended to actually make use of the facilities or book a room. With regard to the, there's also, because injunctive relief is the only relief that there has to be an immediate threat that this harm will occur again. In this case, not only did Ms. Lawford say she never intended to book a room, she's just going on this site to see if it complied with the ADA and regs, but she has affirmatively said she's not going to immediately try to go and book a room or even travel out of state until COVID is over. So at the time this complaint was filed, on its face, there is no indication that there was an immediate or a threat of an immediate harm. In Griffin, the case that everyone was talking about, it says, thus in order to prevail, Griffin must allege an injury that is concrete, particularized, and immediately threatening. And I think Griffin recognized that where you're seeking injunctive relief, there has to be some indication that there is an injury that is concrete, particularized, and immediately threatening. Whether Griffin applies, and I think that it was argued by Lawford that it doesn't apply because that was a closed-end credit union case, and the individual could not utilize the information. But in Griffin, Griffin not only talks about you could not use the information, it also talks about, and it cites to the Allen v. Wright case where they talk about geographic considerations can prevent a person from being able to actually utilize the site and thus suffer a real harm. And in this case, Ms. Lawford decided not to book a room. In Griffin, the individual could not become a member of the credit union and could not utilize the information in any way other than to check. Did Ms. Lawford indicate that she planned to return to the website again to test their ADA compliance? She did. Why isn't that sufficient as a tester? Well, I mean, in Griffin, the Fourth Circuit has said, as a tester, that doesn't disqualify you, but as a tester, you have to also show the constitutional requirements for standing, one of which is that you suffered a real harm. So, if she went back for no other reason but to see if it complied with the ADA, she's not suffered a harm. If she went back and said, I have plans, definite plans to go visit Baltimore, the Inner Harbor, and book a room in this hotel, that would be a different kettle of fish, but she didn't do that. And in fact, we know from the record, looking beyond her complaint, from the end of 2019 up to the point of the hearing on December 1st, 2020, she said, I had no plans to leave the state or travel to Baltimore. And so, for that reason, I don't think she's alleged or established with her testimony or her sworn statement that she suffered real harm. I thought she said she was going to travel when the pandemic started. Right, right. And she went on to the site in July of 2020 and once in August of 2020. And here we are in 2022. Well, the pandemic's still going on. It's still going on. Yes. So, can there be an immediate threat of harm? I think we're, in this case, remotely. I'm sorry? We're being ripped. The pandemic wasn't going on. Well, that's right. So, how did she suffer any sort of personalized injury if her plans had to await something, which we don't know when it's going to occur? I mean, when we argued this case, when we were in front of the district. I'm sorry? We can all travel. Yeah. We were all hoping for that. Yeah, at the time of the hearing. We're even scheduled to go to Richmond in March and have to plan to do it. But we may not end up being able to do it because of the situation. Well, in December 2020, that's what council indicated that, well, by March, the latest, we're going to travel. I'm sorry? In this case, she ran that up the pikeball in this case that I'm going to do something after this pandemic. Well, that's right. And for that reason, under the constitutional requirements of a real threat of an imminent harm, she cannot and could not meet her burden. She didn't plead it. And to the extent we're looking at a factual challenge only, she didn't offer any proof to prove, one, that when she went on the site for the first time, she intended to book a room. And two, that in the near future, she was going to go back on for the same purpose. Now, I also want to point out, with the time I have left, there's reference in Laufer's brief to a minority opinion that the courts have said, well, it's a minority opinion that you have to show an intent to utilize the services or book a room. But I don't know how you define minority opinion, but I looked in the fourth, fifth, and tenth circuits, in my view, have come out and said, you have to show an intention to book a room or utilize the services of the defendant. And then in terms of district courts, district courts in the first, second, third, sixth, ninth, eleventh, and D.C. circuit have taken that same position. The eleventh circuit court of appeals. You say the fourth has? No, in Griffin. You're claiming Griffin controls here. Well, I do, and I think the district court felt the same way. It's already got us counted in. I got you counted in in the credit union case. I'm hoping it'll be the same in this case. You could have mailed it in and just said, well, Griffin takes care of this. We don't even have to have it out there, could you? Well, I think the only thing that distinguishes... It's distinguishable. You can't count us. I was on Griffin. I filed a concurrent. Matter of fact. Well, and to me, the way I read Griffin is that in that case, he could not utilize the services. I thought it was a very limited ruling on myself. Well, it was, and I think the court was very careful not to go beyond the issue presented, but I think part of the issue was whether the individual could show a real injury that was concrete, particularized. So I see my time's up, and I'm happy to respond to any questions. Judge Sackler, Judge Harris, do you have any further inquiries? I do not. Nope. Thank you. Mr. Perot, we really appreciate your argument. Mr. Bacon, you deserve the short rebuttal. Thank you. A lot of issues raised, but Haven's realty. Haven's realty was a, I think it was a 1986 case. Different statute, different type of discrimination, racial discrimination under housing. Fair housing, the court, there were multiple plaintiffs. One of them was a plaintiff... Sorry, counsel, just because you have so little time, I did want to ask you a question about Haven's, and it's the same sort of question I was asking your colleague. So the court in Haven's reads that statute as providing sort of a freestanding, independent right to truthful information, whatever you're going to do with it. And so my question is, I think under Haven's, I have to look at this statute and I guess the regulatory regime, and we're all assuming here that the same rules would apply to these regulations as would apply to a congressional statute, and figure out whether they also provide this kind of freestanding informational right. You are entitled to this information, even if you don't plan to use it. And so my question is, when I look at these regulations, they do seem to at least contemplate that the person will use it, will be using the information to book a room, in that I really struggle with E-1-2. You have to describe the accessible features in the hotel in sufficient detail to permit an individual with disability to figure out, to assess whether the hotel is going to meet his or her accessibility needs, which is sort of the language you would use, I think, if what you have in mind is someone is trying to figure out, can I go to this hotel? That person needs... ...applies here, whether we read these regulations as providing just everyone in the world ought to have this information, or people who want to stay in this hotel need this information. A couple things on that point. First of all, it never said that such was a requirement. In other words, that they had to intend to book a hotel or that they... I know it doesn't. I just read you the relevant language. Yeah. Yes. I know what it says. I just read it to you. And what it could have done, as I said, was the best place if it wanted to impose that obligation would have been to promulgate it under... There's a client-to-customer subsection of 12182, which requires that the plaintiff be a client or a customer of the place of public accommodation in order to have any rights under that subsection. And so, therefore, the fact that that requirement exists there and not under the subsections which govern here under the rules announced by the Supreme Court in cases we cite in our brief, as well as Houston versus Merritt and whatnot, then what counts is that you have restrictive language in one subsection, but not in the one that applies. And that goes back to whether the court even honors that and really brings it back to does Spokio trump that requirement or does it not? And in Haven's Realty, while one talks about racial discrimination and intentional misrepresentations, Haven's Realty is about applying the literal terms of the statute. It was a different statute. The ADA was promulgated afterward, and it used the same operative language. And the 10th Circuit, even though it just came out with a looper opinion, which eviscerates its prior opinions, the 10th Circuit in Tandy and the 11th Circuit in Houston versus Merritt, that's the case I argued, used the rules of statutory construction and said that, well, you apply that principle to the ADA, even if we're not talking about information in the ADA, because those are fiscal barrier cases. Houston versus Merritt was about absence of grab bars and handicapped parking spaces, not about the right to information. But that still extrapolated over in those two courts based on the application of Houston Haven's Realty held that testers have standing. And you read the literal terms of the statute. That was then followed by the 9th and followed by three other circuits for a total of six. And that would include this court's decision in Aberdeen, which doesn't say a whole lot, but follows Houston versus Merritt. I think I've exhausted what I have. Give you the rebuttal time, I believe. We really appreciate it. The work that both of you have placed into this case, and we appreciate your arguments. We're sorry we're not in Richmond, where we would leave the bench and congratulate you at the council tables on the arguments that you presented. Maybe next time. But that will take your feel under advisement. And Madam Clerk, can we take a five minute recess? Yes, sir. Before the third case. Honorable court will take a brief recess.
judges: Robert B. King, Stephanie D. Thacker, Pamela A. Harris